UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| JANET M., | Case No. 6:21-cv-00725-AR |
| Plaintiff, | **AMENDED OPINION AND ORDER** |
| v. | |
| COMMISSIONER SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**ARMISTEAD, Magistrate Judge**

In this judicial review of the Commissioner's final decision denying Social Security benefits, plaintiff Janet M. (her last name omitted for privacy) challenges the Administrative Law Judge's evaluation of her subjective symptom testimony, lay witness statements from her family members, and the medical opinions from her treating therapist, psychiatric nurse practitioner, and physician. (Pl.'s Br. at 9-12, ECF No. 12.)

Page  1  – AMENDED OPINION AND ORDER

Because the court finds that the ALJ erred in all three respects, the Commissioner's decision is REVERSED and REMANDED for an immediate award of benefits **to be calculated based on an established onset date (EOD) of February 28, 2013**.[1]

## ALJ'S DECISION

In denying plaintiff's applications for Title II Disability Insurance Benefits (DIB) and Title XVI Supplemental Security Income (SSI), the ALJ followed the five-step sequential evaluation process.[2] At step one, the ALJ determined that plaintiff has not engaged in substantial gainful employment since February 28, 2013. (Tr. 27.) At step two, the ALJ determined that she had the following severe impairments: spondylosis of the cervical spine, levoscoliosis and osteoarthritis of the thoracic spine, retrolisthesis and imbrication of the lumbar spine, degenerative changes of the pubic symphysis, regional myofascial pain syndrome, right shoulder tendinopathy, posttraumatic stress disorder (PTSD), generalized anxiety disorder, major depressive disorder, and panic disorder. (Tr. 28.) At step three, the ALJ determined that her impairments singly or in combination did not meet or medically equal the severity of any listed impairment. (Tr. 28.)

As for the ALJ's assessment of plaintiff's residual functional capacity (RFC), 20 C.F.R. §§ 404.1545, 416.945, the ALJ determined that plaintiff has the RFC to perform light work. (Tr. 31.) She can lift, carry, push and pull 20 pounds occasionally and 10 pounds

---

[1] This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2] To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746–47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

Page 2 – AMENDED OPINION AND ORDER

frequently; stand or walk in combination for six hours in an eight-hour workday with normal breaks; frequently climb ramps or stairs and occasionally climb ladders, robes, and scaffolds; frequently stoop and crouch; occasionally reach overhead with her upper extremities. (Tr. 31.) The ALJ also found that plaintiff could perform simple tasks and have occasional interaction with the general public and coworkers. (Tr. 31.) However, she cannot work in locations with dense crowds, such as fairs, festivals, and busy retail locations. (Tr. 31.)

At step four, the ALJ determined that plaintiff could not perform any past relevant work. (Tr. 25.) In light of her RFC, the ALJ found at step five that jobs exist in significant numbers in the national economy that plaintiff can perform, including such representative occupations as small product assembler, packager/inspector, and electronics assembler. (Tr. 42.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

Plaintiff argues that the ALJ erred by failing to provide specific, clear and convincing reasons to reject her subjective symptom testimony, disregarding without comment lay witness statements from her family members, and finding unpersuasive without adequate explanation the

Page 3 – AMENDED OPINION AND ORDER

opinions of her treating medical providers. (Pl.'s Br. at 7-13.) The Commissioner counters that the ALJ properly discounted plaintiff's symptom testimony, did not need to address the lay opinions in forming the RFC, and reasonably evaluated the medical source opinions. (Def.'s Br. at 2-9, ECF No. 13.)

A.   *Subjective Symptom Testimony*

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

At the second stage, absent affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for discounting the claimant's testimony about the severity of her symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013); *Tommasetti*, 533 F.3d at 1039.

There is no evidence of malingering here, and the ALJ determined that plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the

Page 4  – AMENDED OPINION AND ORDER

symptoms alleged. (Tr. 32.) The ALJ therefore was required to provide clear and convincing reasons for discounting plaintiff's symptom testimony. *Ghanim*, 763 F.3d at 1163. The court finds that the ALJ failed to meet that standard.

The ALJ gave three reasons for discounting plaintiff's symptom testimony: (1) her mental health symptoms improved with treatment; (2) her neck and shoulder pain improved with treatment; and (3) the severity of her alleged symptoms appeared inconsistent with her activities of daily living. (Tr. 32-35.) Plaintiff challenges each of those reasons as unsupported by substantial evidence.

Turning first to the ALJ's assessment of plaintiff's mental health symptom testimony, the ALJ noted that the overall record reflected waxing and waning of mental symptoms but discounted the severity of plaintiff's reported symptoms by finding that she had "rather consistently reported improvement in her anxiety and depression with medication and therapy/counselling, even though she reported [that] she struggled to leave her house in more recent records." (Tr. 37.) Plaintiff contends that, in reaching that assessment, the ALJ improperly singled-out a few temporary periods of well-being. (Pl.'s Br. at 14.)

An ALJ may discount a claimant's mental health-related symptom testimony on the ground that she improved with treatment. *Niemi v. Saul*, F. App'x 831, 832-33 (9th Cir. 2020) (holding that the ALJ did not err in discounting the claimant's symptom testimony and noting that the ALJ observed that the claimant's "mental health challenges appeared to improve with counselling and medication"). Nevertheless, the Ninth Circuit has found harmful error in many cases involving an ALJ's discounting of a claimant's mental health-related symptom testimony based on evidence of improvement.

For example, in *Garrison*, an ALJ discredited the claimant's symptom testimony "mainly

Page 5 – AMENDED OPINION AND ORDER

on the ground that the record showed that [her] condition had improved due to medication at a few points between April 2007 and June 2009." 759 F.3d at 1016-17. The Ninth Circuit held that the ALJ's rationale was not a clear and convincing reason to discount the claimant's testimony that "since April 2007, she had suffered panic attacks, 'a lot of ups and downs and depression,' severe anxiety, occasional suicidal thoughts, and bouts of paranoia and mania—symptoms that caused major difficulties with social functioning and responding to such stresses as shopping unaccompanied for groceries." *Id.* at 1017. In so holding, the Ninth Circuit observed that it had previously "emphasized [that] while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Id.* It explained that "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.* (citing *Holohan v. Massanari,* 246 F.3d 1195, 1205 (9th Cir. 2001)).

Plaintiff draws comparisons to *Garrison,* noting that her record reflects debilitating symptoms and cycles of improvement and arguing that the ALJ impermissibly relied on a few isolated periods of improvement to conclude she is capable of working. Plaintiff acknowledges that she has experienced some improvement in her depression and anxiety through a combination of medication and therapy, but she contends that her "improvement was minor and that she continued to have severe mental health symptoms which interfere with her ability to work." (Pl.'s Br. at 15.) The court agrees.

In finding that plaintiff's mental health had generally improved since her alleged onset date in 2013, the ALJ relied primarily on records from 2016, in which plaintiff reported that

Page 6 – AMENDED OPINION AND ORDER

medication was generally "working well" for her depression and anxiety. (Tr. 1220, 1215, 1218.) Specifically, the ALJ noted that those reports showed improvement from a 2015 appointment where plaintiff reported severe depression, anxiety, and daily panic attacks. (Tr. 1222.) The ALJ also relied on a 2018 note in which plaintiff reported that medication had "reduced her night terrors by 50%," from nightly to every-other-night. (Tr. 1310.) Based on those instances of improvement, the ALJ concluded that, although plaintiff's symptoms waxed and waned, she "rather consistently reported improvement in her anxiety and depression." (Tr. 37.)

Viewing the record as a whole reveals that the ALJ's finding is not supported by substantial evidence. See *Jacob T. v. Saul*, Case No. 19-cv-01151-SB, 2020 WL 4451163, at *4 (D. Or. Aug. 3, 2020) ("An ALJ errs when she considers evidence . . . selectively, and ignores evidence that contradicts her findings."). By isolating instances of periodic improvement, the ALJ neglected to address other evidence of plaintiff's mental health limitations and failed to consider the trajectory of plaintiff's symptoms since those early reports. *Smith v. Kijakazi*, 14 F.4th 1108, 1110-13 (9th Cir. 2021) (remanding for further fact-finding because "the ALJ did not adequately consider how [the claimant's] symptoms changed over time"). For instance, despite periods of minor improvement, the record consistently reflects that plaintiff experiences overwhelming anxiety in social settings and near-debilitating panic attacks when she tries to leave her home alone. (Tr. 1242, 1307, 1311-12, 1354, 1358, 1375, 1374.) In progress notes from 2019, plaintiff "appeared anxious," reported "uncontrolled anxiety," experienced panic attacks "all the time," rated her depression as an 8/10, and reported that her medication was no longer working. (Tr. 1311-12, 1377.) In April 2020, plaintiff reported that her symptoms persisted and that she remained "fearful of leaving her home," even as she experienced "ongoing improvement" with her depression. (Tr. 1375.)

The ALJ made negligible effort to reconcile plaintiff's more recent reports of severe symptoms with the 2016 and 2018 reports of some improvement with medication, noting only that her symptoms appeared to wax and wane. (Tr. 37.) That was error. *Holohan*, 246 F.3d at 1205 ("That a person who suffers from severe panic attacks, anxiety, and depression make some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). The court is likewise unpersuaded by the Commissioner's argument that the ALJ did not consider evidence selectively, but instead reasonably inferred that the overall record showed that plaintiff's mental health symptoms improved with treatment. (Def.'s Br. at 5-6.) In the court's view, plaintiff does not simply advocate for an alternative interpretation of the record; rather, she identifies a legally insufficient analysis and harmful legal error.

The Commissioner also argues that the ALJ properly discounted plaintiff's mental health symptom testimony based on mental status exams "consistently show[ing] she was pleasant and cooperative during medical appointments," well-groomed, and "engaged and active in the conversation." (*Id.* at 6 (citing Tr. 595, 856, 877, 898, 976, 988, 992, 1002, 1036, 1043, 1127, 1245, 1257, 1263, 1351, 1312, 1257, 1264, 1300).) The Ninth Circuit has rejected reliance on similar observations in the context of evaluating mental health impairments. *See Ghanim*, 763 F.3d at 1164 (rejecting ALJ's reliance on the claimant's "good eye contact, organized and logical thought content, and focused attention" because "[t]hese observations of cognitive functioning during therapy sessions [did] not contradict [the claimant's] reported symptoms of depression and social anxiety"). Thus, the ALJ's first reason is not supported by substantial evidence and, consequently, does not provide a clear and convincing basis to discount plaintiff's testimony.

Next, the ALJ discounted plaintiff's reports of severe right shoulder, neck, and arm pain

Page 8 – AMENDED OPINION AND ORDER

and related functional limitations based on records showing that the pain improved with treatment. (Tr. 34-35.) "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Again, plaintiff contends that the ALJ's assessment improperly isolated limited instances of improvement within the record. (Pl.'s Br. at 14.)

      Plaintiff testified that she experiences chronic neck pain, which radiates into her right arm and causes weakness in her grip. (Tr. 61.) Due to the numbness and tingling in her right hand, she has trouble putting on a seatbelt, lifting items, and reaching overhead to put away dishes. (Tr. 61.) At her last job, the pain in her right side made her unable to use her right hand about 80 percent of the time. (Tr. 63.) Plaintiff also alleged that she has to change positions often because of lower back pain and estimated that she could stand for 30 minutes, walk for 30 to 40 minutes, and sit for 15 minutes at a time. (Tr. 64-65.) She testified that, on most days, she needs to lie down for about 30 minutes to manage the pain. (Tr. 66.) About once every two weeks, the pain is so severe that she cannot get out of bed. (Tr. 66.)

      The ALJ discounted the severity of those symptoms based on treatment records reflecting both immediate relief and sustained improvement from cervical facet injections between 2013 and 2015. (Tr. 32, 34, 39.) Plaintiff began receiving injections in 2013, after which she reported an 80 percent reduction in her immediate pain relief and a 60-70 percent reduction in her pain at a follow-up appointment. (Tr. 1113.) After an injection in 2014, plaintiff indicated that her pain had reduced from a "constant 6/10 to a constant 3/10." (Tr. 1104.) Likewise, she experienced noticeable improvement following multiple injections in 2015, once reporting an 85 percent improvement overall in her symptoms. (Tr. 998, 986, 981, 975-77.) Summarizing that history, the ALJ concluded that plaintiff's condition had improved because she "received significant

relief in her pain from trigger point injections" and "did not seek further treatment for her shoulder pain" until 2020. (Tr. 35.)

Although the ALJ's findings of improvement are supported by the record, the court finds her explanation of the trajectory of plaintiff's symptoms oversimplified, particularly given its focus on only the early years of plaintiff's alleged disability period. *See Maiden v. Berryhill,* Case No. 2:17-cv-00420-MC, 2018 WL 1069465, at *3 (D. Or. Feb. 27, 2018) ("Medical improvement 'must be read in the context of the overall diagnostic picture the provider draws . . . [because] [o]ccasional symptom-free periods are not inconsistent with disability."). The ALJ notes that plaintiff reported "chronic right neck and shoulder pain" at a 2020 appointment in Bend, Oregon, but does not address that the prescribed medication—gabapentin—produced "no noticeable improvement" in her symptoms. (Tr. 35, 1350.) Moreover, although plaintiff did not seek treatment for her neck pain between 2015 and 2020, the record suggests that her decision was influenced by external factors. Beginning in 2016, plaintiff reported in medical records that she was in an abusive relationship with her husband, who she described as quick to anger, unpredictable, and threatening. (Tr. 1205, 1208, 1244, 1246.) In October 2017, she separated from him, leaving her "in a phase of acute transition, without money, possessions, or information" and "without income, as her husband controlled the finances." (Tr. 124, 1246, 1256.) In that period, plaintiff lost her health insurance, leaving her to deal with her symptoms "without significant intervention." (Tr. 1244, 1350.) Given that history, the court finds that the ALJ's second reason is not supported by substantial evidence and is not a clear and convincing reason to discredit plaintiff's symptom testimony.

Finally, the ALJ found plaintiff's testimony about the severity of her symptoms inconsistent with her activities of daily living. (Tr. 35, 37); *Garrison,* 759 F.3d at 1016 (stating

that a claimant's activities have "bearing on [her] credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations"). The ALJ based that finding on a 2016 women's health history note, in which plaintiff reported exercising up to five days per week, and a 2017 treatment note, in which she indicated a plan to travel to southern California for an unspecified purpose. (Tr. 1279, 1189.) Despite the Commissioner's argument to the contrary, the ALJ did not cite to other evidence in her decision. (*See* Def.'s Br. at 7 (citing three instances of reported exercise)); *see also Garrison*, 759 F.3d at 1010) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on grounds upon which he did not rely."). Given these sparse citations—particularly contrasted with plaintiff's frequent reports of her inability to leave the house—the ALJ's third reason is not supported by substantial evidence. (*See* Tr. 1242, 1307, 1311-12, 1354, 1358, 1373-74 (reporting panic attacks and overwhelming anxiety).) Thus, the ALJ's third reason cannot provide a clear and convincing reason to discount plaintiff's testimony.

In conclusion, the court finds that the ALJ committed harmful error in discounting Plaintiff's symptom testimony because the ALJ failed to provide at least one clear and convincing reason for doing so.

**B.**   *Lay Witness Testimony*

Lay witness testimony about a claimant's symptoms is competent evidence that an ALJ must consider unless she "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (holding that competent lay witness testimony "*cannot* be disregarded without comment" (emphasis in original)).

In addition to plaintiff's own subjective allegations, her adult son, ex-husband, sister, and brother-in-law submitted statements in support of her disability. (Tr. 327-33, 390, 395.) Plaintiff argues that the ALJ erred by disregarding those lay witness statements without comment. (Pl.'s Br. at 16.) The Commissioner attempts to counter plaintiff's argument on two grounds.

First, the Commissioner argues that the ALJ did not commit legal error because 20 C.F.R. § 404.1520c(d) does not require ALJs to articulate how they consider nonmedical source statements. (Def.'s Br. at 8.) The Commissioner is mistaken: "Although § 404.1520c(d) states [that] the Commissioner is 'not required to articulate how we consider evidence from nonmedical sources' using the same criteria for medical sources, it does not eliminate the need for the ALJ to articulate his consideration of lay-witness statements and his reasons for discounting those statements." *Joseph M. R. v. Comm'r of Soc. Sec. Admin.*, Case No. 3:18-cv-01779-BR, 2019 WL 4279027, at *12 (D. Or. Sept. 10, 2019) (quoting 20 C.F.R. § 404.1520c(d)).

Second, the Commissioner contends that the ALJ's failure to consider the lay-witness statements was harmless because the ALJ discounted similar testimony from plaintiff. (Def.'s Br. at 8 (citing *Molina v. Astrue*, 674 F.3d 1104, 1118-19 ("Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss lay witness testimony to be prejudicial per se.")).) That argument fails because, as explained above, the ALJ did not provide legally sufficient reasons to discount plaintiff's subjective symptom testimony. Therefore, the ALJ erred in failing to consider the lay witness statements.


C.  *Medical Opinion Evidence*

For disability claims filed on or after March 27, 2017, new regulations for evaluation medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In making that determination, the ALJ primarily considers the "supportability" and "consistency" of the opinions. *Id.* §§ 404.1520c(c), 416.920c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support her opinion. *Id.* §§ 404.1520c(c)(1), 416c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* §§ 404.1520c(c)(2), 416c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* §§ 404.1520c(c)(3), 416c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* §§ 404.1520c(b)(2)-(3), 416c(b)(2)-(3).

Plaintiff raises two challenges to the ALJ's assessment of the medical opinions of her treating therapist, psychiatric nurse practitioner, and physician—LCSW Lynn, APRN Mileham, and Dr. Stanley. (Pl.'s Br. at 8.) First, she contends that the ALJ erred by failing to provide a "specific and legitimate reason" for discounting the opinions of her treating medical providers. *Id.*; *Garrison*, 759 F.3d at 1012 (explaining that, under the old regulations, and ALJ "may only

Page 13 – AMENDED OPINION AND ORDER

reject [the opinion of a treating or examining doctor] by providing specific and legitimate reasons that are supported by substantial evidence"). Second, she argues that the ALJ's assessment of each opinion as "not persuasive" is not supported by substantial evidence. (Pl.'s Br. at 12-13.) The Commissioner counters that the revised regulations are incompatible with the judicially-created "specific and legitimate reason" standard and that the ALJ reasonably assessed of the persuasiveness of the challenged opinions under the new regulations. (Def.'s Br. at 9-15.)

The parties' first dispute is readily resolved in the Commissioner's favor by the Ninth Circuit's recent holding in *Woods v. Kijakazi*, 32 F.4th 785, 793 n.4 (9th Cir. 2022). Addressing the relationship between the revised regulations and longstanding precedent under the old regulations, the Ninth Circuit explained:

//

> The revised social security regulations are clearly incompatible with our caselaw according special deference to the opinions of treating and examining physician on account of their relationship with the claimant. . . . Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions . . . is likewise incompatible with the revised regulations.

*Id.* at 792. Given that incompatibility, the Ninth Circuit held that the revised regulations "displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Id.* at 787. Consequently, the ALJ did not need to give a "specific and legitimate" reason to discredit the medical source evidence.

Nevertheless, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* Thus, in resolving the parties' second dispute, the court evaluates whether substantial evidence supports the ALJ's explanations for finding unpersuasive

the opinions of LCSW Lynn, APRN Mileham, and Dr. Stanley.

Plaintiff began seeing her treating therapist, LCSW Lynn on a weekly basis in May 2019. (Tr. 1330.) In a 2019 medical source statement, Lynn opined that, given her psychological impairments, plaintiff was "extremely limited" in her ability to complete a normal workday or workweek without interruption. (Tr. 1330.) Lynn also wrote letters in October 2019, January 2020, and April 2020, in which she opined that plaintiff's ability to gain and maintain employment was "severely compromised" by her struggles to leave the house for basic tasks and her panic interacting with most individuals. (Tr. 1330, 1336, 1365.) In the April 2020 letter, Lynn noted that she would often find plaintiff "rocking anxiously in the waiting room" before sessions and that, despite "active engagement" in therapy, plaintiff had resumed self-harming behaviors. (Tr. 1365.) Given those symptoms, Lynn opined that plaintiff would likely be absent from work about four days each month and off task at least 25 percent of the time. (Tr. 1327.)

The ALJ found Lynn's opinions not persuasive, noting only that the "record as discussed above does not support those limitations" because it did "not note that frequent redirection was required or that [plaintiff] was unable to participate effectively in appointments." (Tr. 40.) That explanation is insufficient and unsupported by substantial evidence. The ALJ's generic reference to the "record as discussed above" does not afford the court a meaningful opportunity for review. *See Bunnell v. Sullivan*, 947 F.3d 341, 46 (9th Cir. 1991) (explaining that, under the new regulations, "ALJ's must still provide sufficient reasoning for federal courts to engage in meaningful appellate review"). Moreover, the ALJ fails to explain how plaintiff's active participation in therapy and *apparent* lack of need for redirection undermine the consistency or supportability of Lynn's opinion. *See Woods*, 32 F.4th at 793 n.4 (instructing ALJs "to use these two terms of art—'consistent' and 'supported'—with precision"). Thus, the ALJ erred.

Page 15 – AMENDED OPINION AND ORDER

The ALJ likewise erred in finding the medical opinions of APRN Mileham and Dr. Stanley unpersuasive without adequate explanation. Consistent with Lynn's assessment, Mileham and Stanley opined that plaintiff's psychological impairments would likely cause her to miss work four days per month and be off task at least 25 percent of the time. (Tr. 1370, 1373, 1330, 1345.) Each opined further that plaintiff had "extreme limitations" in all four broad areas of functioning. (Tr. 1330, 1333, 1345, 1370.) Dr. Stanley also opined that plaintiff has some physical restrictions, such that she could occasionally lift up to 20 pounds, occasionally engage in handling activity, sit for one hour and stand for 30 minutes at a time, stand for a total of less than two hours in a workday, and would likely need unscheduled breaks. (Tr. 1340-43.) Finally, Dr. Stanley noted that plaintiff experienced fatigue, low energy, and poor focus as side effects of her medication. (Tr. 1340-43.)

In rejecting Mileham and Stanley's opinions, the ALJ again offered a generic explanation that the opinions were "not supported by [each provider's] own examinations . . . and [] not supported by the record as a whole." (Tr. 40.) As explained above, that explanation does not offer the court a meaningful opportunity for review. *See Treichler*, 775 F.3d at 1093 ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). Moreover, the ALJ offered no citations to records that were inconsistent with Mileham's opinion. And, the ALJ cited one record to support her assertion that Dr. Stanley's opinion about plaintiff's physical restrictions and absence needs conflicted with an "examination showing only some loss of strength in the right extremity" and with "largely normal examination." (Tr. 40.) That record fails to provide a basis upon which to discount Dr. Stanly's myriad other restrictions. Accordingly, substantial evidence does not support the ALJ's reason

Page 16 – AMENDED OPINION AND ORDER

for finding those opinions not persuasive, and the ALJ has erred.

**D.     *Remedy***

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Treichler*, 775 F.3d at 1101-02. A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (quotation marks and citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 402, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy). Even when the credit-as-true standard is met, the district court retains the "flexibility to remand for further proceedings when the record as a whole casts serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021.

Plaintiff argues that an award for an immediate payment benefits is appropriate because when her testimony, the lay witness statements from her family, and the medical opinions from LCSW Lynn, APRN Mileham, and Dr. Stanley are properly credited, the vocational testimony elicited at the hearing establishes that she is unable to sustain competitive employment. The court agrees and finds that plaintiff satisfies the credit-as-true standard.

As discussed above, the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's subjective testimony and the medical source opinions of Lynn, Mileham, and Stanley. Plaintiff testified that she suffers from debilitating mental health conditions that frequently prevent her from leaving the house, and the statements submitted by her family members are

Page 17 – AMENDED OPINION AND ORDER

consistent with that testimony. Likewise, her treating providers each opined that plaintiff's impairments would likely cause her to miss at least four days of work per month and be off task at least 25 percent of the time. (Tr. 1327, 1370, 1373, 1330, 1345.) At the hearing, the vocational expert testified that being off-task more than ten percent of the day or absent more than one or two days per month would preclude competitive employment. (Tr. 80-81.) When that evidence is credited as true, the ALJ would be required to find plaintiff disabled and remand for further proceedings would serve no useful purpose.

Given that evidence, the court has no "serious doubt" as to whether plaintiff is seriously disabled. *See Revels v. Berryhill*, 874 F.3d 648, 668 n.8 (9th Cir. 2017) (explaining that, where each of the credit-as-true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled"). Accordingly, the court exercises its discretion to credit the erroneously discredited evidence as true and remands this case for an immediate calculation and payment of benefits.

## CONCLUSION

For the above reasons, the court REVERSES the Commissioner's final decision and REMANDS this case for an immediate award of benefits **to be calculated based on an established onset date (EOD) of February 28, 2013.**

ORDERED, on May 9, 2023.

_____
JEFF ARMISTEAD
United States Magistrate Judge

Page 18 – AMENDED OPINION AND ORDER